UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

ROBERT L. SWINTON, JR.,

                              Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    15-CV-47

JON SERDULA, STEVEN PASCUZZI, ABHAY
DAVE, and JAIME TORRES,

                              Defendants.

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━


        Proceeding *pro se*, plaintiff Robert L. Swinton, Jr. ("Plaintiff") alleges that while he

was a federal pretrial detainee, defendant employees of the United States Marshals

Service ("USMS") ("Defendants") were deliberately indifferent to his dental needs and

also violated his right to access the courts.  Dkt. 4.  Pending before the Court are

numerous motions filed by both parties, namely Defendants' motion to dismiss or,

alternatively, for summary judgment (Dkt. 36); Defendants' motion to stay discovery

(Dkt. 40); two motions to amend Plaintiff's First Amended Complaint (Dkts. 47 and 49);

Plaintiff's motion to lift the stay of all proceedings (Dkt. 59); Plaintiff's motion for a

hearing regarding exhaustion requirements of the Prison Litigation Reform Act ("PLRA")

(Dkt. 67); and Plaintiff's motion to dismiss without prejudice to refile and for an

electronic copy of the case file (Dkt. 74).

1

## **FACTS**

On October 16, 2012, members of the Rochester, NY Police Department and the Bureau of Alcohol, Tobacco, Firearms and Explosives executed a state court authorized search warrant for narcotics and drug proceeds at the residence of Plaintiff.  Complaint, *United States v. Swinton*, 6:15-CR-6055, (W.D.N.Y. Oct. 19, 2012), ECF No. 1.  Law enforcement seized guns and narcotics from the residence, and on October 19, 2012, Plaintiff was arrested on a federal warrant.  *Id*.; Arrest Warrant, *United States v. Swinton*, 6:15-CR-6055, (W.D.N.Y. Nov. 5, 2012), ECF No. 9.

Plaintiff was housed at the Monroe County Jail ("MCJ") from the date of his arrest through February 12, 2014.  Dkt. 36-10.  On February 12, 2014, Plaintiff was transferred to the Livingston County Jail ("LCJ") and remained there through October 8, 2015.  *Id*.

The USMS detains individuals charged with violations of federal law at local jails, including MCJ and LCJ, pursuant to various Intergovernmental Agreements.  Dkt. 36-10.  Plaintiff alleges that the Defendants were deliberately indifferent to his need for dental treatment from December 2012 through February 18, 2015.  Dkt. 4.  He also alleges that upon his transfer to LCJ, the Defendants violated his right to access the courts because he was denied access to federal legal research materials.  *Id*.

Defendants Jon Serdula, Jaime Torres, and Abhay Dave are three Deputy United States Marshals ("DUSMs"), the latter of whom was serving as an Acting Supervisor in his connection to the instant matter.  Dkts. 26; 36-8; 36-16; and 36-17.  The fourth and final defendant, Steven Pascuzzi, was employed as a USMS Operations Support Specialist ("OSS") at all times relevant.  Dkts. 26 and 36-10.

## PROCEDURAL HISTORY

Plaintiff originally brought this *pro se* suit pursuant to 28 U.S.C. § 1346(b), the Federal Tort Claims Act ("FTCA"), against the Western District of New York and the USMS.  Dkt. 1.  Due to his failure to exhaust administrative remedies under the FTCA, his claims were dismissed without prejudice; however, the Court granted Plaintiff leave to file an amended complaint specifically alleging "a *Bivens* claim against a federal government officer(s) or employee(s) in his individual capacity whom he claims violated his constitutional rights" when he was denied dental care and access to the courts.  Dkt. 3.

Plaintiff then filed a First Amended Complaint pursuant to 28 U.S.C. § 1331 against unknown USMS supervisors alleging almost identical factual claims as those set forth in his original Complaint.  Dkt. 4.  Specifically, he alleged he was subjected to numerous episodes of oral puss discharge stemming from an abscessed tooth, with related swelling and jawbone decay, for over two years while the USMS supervisors were deliberately indifferent to his need for dental care and treatment.  *Id*.  Additionally, Plaintiff alleged that upon his transfer in February 2014 to the Livingston County Jail, he was denied access to federal treatises and other law library materials he required as a *pro se* federal litigant housed in a state facility.  *Id*.  According to Plaintiff, a Lexis Nexis kiosk terminal was installed in September 2014, but prior to that time the jail did not have resources related to federal law.  *Id*.  Even after installation of the kiosk, he alleges he was being improperly charged for printed copies of his legal research, sometimes forbidden from receiving printed copies altogether, and that he encountered numerous technological difficulties that were not timely resolved.  *Id*.  Finally, Plaintiff clarified in an

under-seal filing that he believes his inability to access federal law contributed to him being designated career offender status, which led to an excessively high imprisonment range being offered in the plea agreement that he rejected in *United States v. Swinton*, 6:15-CR-6055.  Dkt. 6.

The First Amended Complaint was dismissed with prejudice when the Court found it failed to state a claim upon which relief could be granted.  Dkt. 17.  The Court determined that the allegations amounted to nothing more than claims of vicarious responsibility under *respondeat superior*, and therefore critically failed to state that the defendants had personally contributed to the constitutional violations the First Amended Complaint set forth.  *Id*.

Plaintiff appealed (Dkt. 19) the order of dismissal and the Second Circuit Court of Appeals issued a mandate vacating the judgment of dismissal and remanding the case for further proceedings, instructing that *pro se* submissions should be construed liberally as requests for assistance in identifying "John Doe" defendants.  Dkt. 21.

At the Court's direction (Dkt. 25), a *Valentin*[1] response was filed by the Government (Dkt. 26), and the above-named Defendants were substituted. Several weeks later, Defendants filed their pending motion to dismiss.  Dkt. 36.

## DISCUSSION

### I.   Defendants' Motion to Dismiss and/or for Summary Judgment

### A.  Legal Standards

Defendants have moved for an order dismissing Plaintiff's First Amended Complaint pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil

---

[1] *See Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997).

Procedure.  Plaintiff bears the burden of establishing subject matter jurisdiction under Rule 12(b)(1) by a preponderance of the evidence and the Court may consider evidence outside the pleadings without converting the motion to one for summary judgment. *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).  However, if the jurisdictional question is interwoven with the underlying merits of the case, conversion of a Rule 12(b)(1) motion to a Rule 12(b)(6) or 56 motion is required.  *Dorchester Fin. Sec, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 87 (2d Cir. 2013).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

Pursuant to Federal Rule of Civil Procedure 12(d), if matters outside the pleadings are presented and considered by the court on a Rule 12(b)(6) motion, the motion "must be treated as one for summary judgment under Rule 56."

A party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it could affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*.  All justifiable inferences are to be drawn in favor of the nonmovant.  *Id*. at 255.  However, the nonmovant "may not rely on mere

conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).

B. **Analysis**

With respect to Federal Rule of Civil Procedure 12(b)(1), Defendants' motion argues only that Plaintiff's FTCA claim must be dismissed.  Defendants assert that Plaintiff's failure to file an administrative tort claim with the appropriate federal agency is a jurisdictional defect that cannot be waived.  Citing *Keene Corp. v. United States*, Defendants argue that the procedures of 28 U.S.C. § 2675 must be strictly adhered to as they guard against the unauthorized waiver of sovereign immunity.  *Id*., 700 F.2d 836, 841 (2d Cir. 1983).

Section 2675 states that an administrative claim must be presented to the appropriate federal agency and either denied or left pending with the agency for six months, at which time it is deemed denied, before a FTCA suit can be initiated against the United States.  Title 28 also contains a provision which governs the time for commencing tort claims against the United States – § 2401(b) provides that such claim will be "forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."

In April 2015, just two months before Plaintiff's FTCA claims were initially dismissed, the Supreme Court decided *United States v. Kwai Fun Wong*, which held that § 2401(b) was not jurisdictional despite its "forever barred" phrasing.  *Id*., 575 U.S.

402 (2015).  Furthermore, in light of § 2401(b)'s legislative history, a rebuttable

presumption in favor of equitable tolling applied to FTCA suits against the United States.

*Id*.

The jurisdictional question presented in this case is therefore inextricably

intertwined with the underlying merits of the FTCA claim, thus requiring analysis of this

issue under the standards of Rule 12(b)(6) or 56.  *See Dorchester*, 722 F.3d at 87.

Additionally, because the Court considered several declarations attached to

Defendants' motion to dismiss, pursuant to Rule 12(d) the standards for summary

judgment set forth in Rule 56 must be applied to all aspects of the motion.

### i.   *Bivens* Claims

In 1971, the Supreme Court created a limited federal analogue to 42 U.S.C. §

1983 insofar as it found that a plaintiff was entitled to money damages for the

constitutional violations he suffered at the hands of federal officials.  *Bivens v. Six*

*Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971).  In that case, federal employees

had performed unconstitutional searches and seizures in violation of the plaintiff's

Fourth Amendment rights.  *Id*.  In the decades that followed, the Supreme Court itself

has only extended the *Bivens* concept of invoking general federal question jurisdiction

to obtain money damages against a federal official in the absence of an applicable

statutory protection in two other cases.  *Arar v. Ashcroft*, 585 F.3d 559, 571 (2d Cir.

2009).

The first such case involved an employment discrimination claim brought by a

female employee against her Congressman employer alleging sexual harassment and

wrongful termination in violation of the Due Process Clause of the Fifth Amendment.

*Davis v. Passman*, 442 U.S. 228 (1979).  The second case was brought by the estate of decedent and alleged that prison officials were deliberately indifferent to decedent's serious medical needs, resulting in his death, in violation of the Eighth Amendment and decedent's due process rights.  *Carlson v. Green*, 446 U.S. 14 (1980).

In declining to extend a *Bivens* cause of action to allow recovery against a private corporation operating a halfway house under contract with the Bureau of Prisons in 2001, the Supreme Court urged "caution toward extending *Bivens* remedies into any new context."  *Corr. Servs. Corp. v. Malesko*, 534 US 61, 74 (2001).  More recently, the Supreme Court announced that courts must assess each *Bivens* claim presented for whether it constitutes a new *Bivens* context by determining whether "the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1859 (2017).

The Supreme Court used the opportunity provided by *Ziglar* to delineate examples of potentially meaningful differences, including "the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider."  *Id*. at 1860.

In order to maintain a *Bivens* action, a plaintiff must allege two principal elements: first, that the defendants deprived him of a right secured by the Constitution; and second, that the defendants acted under color of federal law.  *See Mahoney v. Nat'l*

*Org. for Women*, 681 F.Supp. 129, 132 (D.Conn. 1987).  Defendants do not dispute that at all times relevant they were acting in their capacity as employees of the USMS, under color of law.  Dkt. 38.  Our analysis will therefore focus solely on the first prong.

### b. Deliberate Indifference

Plaintiff's first *Bivens* cause of action alleges that Defendants were deliberately indifferent to his dental needs from December 2012 through February 2015, during the time that he was a pretrial detainee.  The Eighth Amendment to the Constitution protects prisoners from cruel and unusual punishment, and it is well-established that preventing an inmate from receiving necessary medical care constitutes a violation of this provision.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).  Eighth Amendment liability requires more than lack of due care or mere negligence; rather, the standard is deliberate indifference, which has oft been equated with recklessness.  *Id*. at 835-36, citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) ("We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain,' *Gregg v.* Georgia, 428 U.S. 153, 173 (1976), proscribed by the Eighth Amendment."); *LaMarca v. Turner*, 995 F.2d 1526, 1535 (11th Cir. 1993); and *Manarite v. City of Springfield*, 957 F.2d 953, 957 (1st Cir. 1992).

At all times relevant, Plaintiff was a federal pretrial detainee, and as such was not afforded the protection of the Eighth Amendment because he was not yet being punished.[2]  *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000).  Nevertheless, the due

---

[2] After a jury found him guilty on four of five criminal counts, Plaintiff was sentenced to 270 months of imprisonment.  Judgment, *United States v. Swinton*, 6:15-CR-6055 (W.D.N.Y. Dec. 28, 2017), ECF No. 217.

process clauses of both the Fifth Amendment and the Fourteenth Amendment have been construed to provide equivalent protections for pretrial detainees in federal and state-level custody, respectively.  *Id*.

Accordingly, the threshold question is whether a Fifth Amendment claim of the Defendants' deliberate indifference to Plaintiff's dental needs presents a new *Bivens* context.

Clearly, the facts of *Bivens* bear little resemblance to the matter at hand.  And while *Davis* involved the same Constitutional provision, other similarities to Plaintiff's allegation are scarce.  *Carlson* offers the most analogous Supreme Court precedent because it presented a claim of deliberate indifference to an inmate's healthcare needs. Upon examination of the examples of potentially meaningful differences that the Supreme Court set forth in *Ziglar*, however, it is evident that Plaintiff's deliberate indifference claim presents a new context.

The Supreme Court's instruction to consider "the rank of the officers involved" in performing the analysis required under *Ziglar* provides a sufficiently meaningful distinction as to create a new *Bivens* context in this case.  In *Carlson*, defendants included (1) the Chief Medical Officer directly responsible for medical services at the prison decedent was confined to, *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978); (2) an unlicensed nurse who treated decedent in his capacity as a medical training assistant, *id*.; (3) a staff officer who brought emergency medical equipment to treat decedent, *id*.; (4) the Joint Commission of Accreditation of Hospitals, *id*.; (5) the Director of the federal Bureau of Prisons, *id*. at 676; and (6) the Assistant Surgeon General of

the United States, who was responsible for monitoring medical services at the prison decedent was confined to, *id*.

As previously noted, Defendants here are three Deputy United States Marshals ("DUSMs"), one of whom was acting as a supervisor in his connection to the matter alleged, and a USMS Operations Support Specialist.  Dkts. 36-8, 36-10, 36-16, and 36-17.  None of these defendants worked in either facility – Livingston Country Jail ("LCJ") and Monroe County Jail ("MCJ") – that Plaintiff was held in during the span of his claim. Further, DUSMs Dave, Serdula, and Torres all provided declarations asserting that they have no duties "with respect to prisoner medical care" and emphasizing that they are not authorized or qualified to "make medical recommendations or decisions regarding a prisoner's medical care."  Dkts. 36-8, 36-16, and 36-17.

Defendants Serdula and Torres were assigned to escort Plaintiff to a May 14, 2014 Court appearance in Plaintiff's then-ongoing criminal case.  Dkts. 36-16 and 36-17. During that appearance, Plaintiff's counsel advised Magistrate Judge Payson that Plaintiff had filed a grievance with LCJ in an attempt to procure dental treatment from an outside specialist, to no avail.  Dkt. 74.  Magistrate Judge Payson in turn asked the DUSMs present – Defendants Serdula and Torres – to contact LCJ and request a status on Plaintiff's dental treatment, and report back to the Court.  *Id*.; *see also* Minute Entry, *United States v. Swinton*, 6:15-CR-6055 (W.D.N.Y. May 14, 2014), ECF No. 45.

In contrast, Plaintiff's First Amended Complaint alleges that these defendants were "directly responsible for 2 years of medical/dental denial and deliberate indifference to the plaintiff's dental needs."  Dkt. 4.  The Court has also reviewed Plaintiff's proposed Second Amended Complaint, currently under the Court's

consideration, for further detail regarding the alleged acts or omissions of Defendants Serdula and Torres.  The "Affirmation of Complaint" which accompanied this filing states that "[n]either of these defendants can recall reporting the [request of Magistrate Judge Payson] to a superior U.S. Marshal Service employee, and thereby liable [*sic*] for the deliberate indifference of constitutional rights by medical denial after being directed by the Court to address the dental abscessing."  Dkt. 47.

As previously noted, neither Defendant Serdula nor Torres were authorized to provide or oversee the provisioning of detainee medical treatment.  And while both defendants admit they do not have specific recollections of the Magistrate Judge's May 14, 2014 request, they also both assert that their standard practice was to notify their supervisor when a court made such a request.  Dkt. 36-16 and 36-17.

Defendant Dave was serving as the Acting Supervisory DUSM on May 14, 2014. Dkt. 36-8.  Although he does not specifically recall having been informed of the Magistrate Judge's request, his declaration asserts that his standard practice was "to either contact the medical staff of the jail … directly, or to ask the USMS personnel … who normally have contact with the jail medical staff on medical requests to do so on my behalf."  *Id.*  Neither Plaintiff's First Amended Complaint nor his pending proposed Second Amended Complaint specifically refer to acts or omissions of Defendant Dave; rather, the former simply alleges that he, like his co-defendants, was "directly responsible for 2 years of medical/dental and deliberate indifference to the plaintiff's dental needs."  Dkt. 4 and 47.

Defendant OSS Pascuzzi's duties included processing requests for outside medical care of federal detainees held at state facilities.  Dkt. 36-10.  According to OSS

Pascuzzi's declaration, routine medical decisions concerning detainees are made by the state facilities where they are housed, but requests involving treatment outside of the jails must be submitted in the form of a USMS Prisoner Medical Request Form ("PMR") and authorized by the Office of Intra-Agency Medical Services ("OIMS") at USMS Headquarters prior to the inmate receiving the requested treatment.  *Id*.

As a matter of course, Defendant Pascuzzi refers all requests for outside medical care to OIMS for review, and medical personnel in the Prisoner Operations Division ("POD") of OIMS are responsible for determining whether to approve such requests.  *Id*. Defendant Pascuzzi avers that this is precisely what happened when he processed PMRs from LCJ dated August 7, 2014 and November 24, 2014 requesting outside dental services for Plaintiff.[3]  *Id*.

In sum, each of the Defendants had limited involvement in Plaintiff's pursuit of outside dental care and served roles quite distinct from each of the defendants in *Carlson*.  Pursuant to *Ziglar*, this claim therefor presents a new *Bivens* context, and the Court must undertake the two-step analysis the Supreme Court established in *Wilkie v. Robbins*, 551 U.S. 537 (2007).  First, the Court must determine whether "any alternative, existing process for protecting [plaintiff's] interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."  *Id*. at 550.  If there is no such statutory alternative, the Court must then

---

[3] The August 7, 2014 PMR for a tooth extraction was approved by OIMS that day.  Dkt. 36-13. The November 24, 2014 PMR for a root canal was not approved by OIMS until January 23, 2015.  Dkt. 36-15.  This delay was caused by OIMS requests for additional information from LCJ, some of which LCJ procured from an outside dental office, and cannot reasonably be attributed to Defendant Pascuzzi.  *Id*; Dkt. 36-10, 36-13, and 36-14.

ask whether there are "special factors counselling hesitation" before authorizing a new *Bivens* context. *Id*.

Plaintiff had alternative means of relief, including a suit under the FTCA, as Defendants acknowledge. Dkt. 65. As will be discussed in detail below, Plaintiff has actually sued the Government pursuant to the FTCA in this case. Plaintiff has also brought three additional suits against other defendants, including medical providers and employees of LCJ, concerning his dental care or lack thereof while he was a pretrial detainee. *See Swinton v. Livingston County, et al*., 15-CV-53; *Swinton v. Steuben County, et al*., 16-CV-116; and *Swinton v. Correct Care Solutions, Inc., et al*., 16-CV-165. These civil cases sought damages for the same harm alleged in this matter, albeit based on the actions or inactions of different individuals and entities. Put another way, Plaintiff not only had means of obtaining relief other than initiating a *Bivens* claim, but he actively pursued such relief.

As there is a statutory alternative to this claim that amounts to a compelling reason for this Court not to create a new implied cause of action, we need not analyze whether special factors counsel hesitation in creating this new *Bivens* context. The Court finds that there is no *Bivens* remedy available for this claim under the circumstances of the case. Defendants' motion for summary judgment is therefore granted with respect to Plaintiff's claim that Defendants Serdula, Torres, Dave, and Pascuzzi were deliberately indifferent to his dental needs.

## c. Access to Court

Plaintiff's second *Bivens* cause of action alleges that the Defendants are responsible for "the denial of access to Court and deliberate indifference to the legal

needs of the plaintiff." Dkt. 4.  Although the constitutional right of access to the courts is established by the First Amendment, which Plaintiff's complaints do not reference, the due process clause affords prisoners access to the courts in order to "seek redress for violations of their constitutional rights." *Adekoya v. Chertoff, et al.*, 2:08-CV-3994, 2009 U.S. Dist. LEXIS 16980 at *11 (D.N.J. Mar. 4, 2009) citing *Procunier v. Martinez*, 416 U.S. 396 (1974), *overruled on other grounds*; *Thornburgh v. Abbott*, 490 U.S. 401 (1989).

Since Plaintiff alleges this violation began on February 12, 2014 – the day he was transferred from MCJ to LCJ – he was a federal pretrial detainee at all times relevant.  As discussed above, the due process clause of the Fifth Amendment has been interpreted to provide pretrial detainees in federal custody with protections similar to those that the Eight Amendment imparts to prisoners.  *Cuoco* at 106 (2d Cir. 2000). This Court sees no reason why that logic should not apply in the context of an access to courts claim, as well.

Therefore, the threshold question concerning this claim is whether it presents a new *Bivens* context.  None of the Supreme Court *Bivens* precedent – *Bivens*, *Davis*, or *Carlson* – resembles the instant claim.  As such, allowing this claim to move forward would extend *Bivens* remedies into a significantly new context, one this Court finds to be meaningfully different from prior *Bivens* cases.

Under the two-step *Wilkie* analysis, it is again apparent that Plaintiff could have, and in fact did, pursue an alternative process for relief – specifically, suit under the FTCA.  One of Plaintiff's other three civil suits mentioned above, *Swinton v. Steuben County, et al.*, also overlaps with this claim.  Just as with respect to Plaintiff's deliberate

indifference *Bivens* claim, there is also a statutory alternative to this claim, so it is not necessary to examine whether special factors counsel hesitation in extending *Bivens* to this context.  Accordingly, Defendants' motion for summary judgment is granted with respect to Plaintiff's claim that Defendants Serdula, Torres, Dave, and Pascuzzi prevented his access to the Court.

## II.     Plaintiff's Motions to Amend

Approximately one week after Defendants' motion to dismiss was filed, Plaintiff submitted a proposed Second Amended Complaint to the Court.  Dkt. 47.  Through it, he seeks to (1) reinstate his FTCA claims under 28 U.S.C. § 1346(b); (2) add Maureen Cippel as a defendant; (3) reinstate official capacity claims against all USMS defendants, including Cippel; and (4) amend the monetary remedy previously sought. Ten days later, Plaintiff docketed a proposed Third Amended Complaint, seeking to modify his proposed Second Amended Complaint only to add the United States of America as a named defendant.  Dkt. 49.

Plaintiff filed his First Amended Complaint after the Court dismissed Plaintiff's original Complaint, so he no longer retains the right to amend as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1)(B).  Under Rule 15(a)(2), however, the Court may grant leave freely "when justice so requires."  Since these requests to amend were made after Defendants' filing for summary judgment and the parties have fully briefed the issues, the Court next considers whether the proposed amendments withstand scrutiny under the summary judgment standard.  *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2001).

### A.  FTCA Claims

With respect to Plaintiff's FTCA claims, there is a genuine issue of material fact regarding whether Plaintiff administratively exhausted his claims.  The Court previously found that administrative exhaustion under 28 U.S.C. § 2675(a)[4] was jurisdictional in nature, and since Plaintiff had not alleged that he filed an administrative claim with the USMS prior to initiating suit, the Court lacked subject matter jurisdiction.  Dkt. 3; *see also* Dkt. 1.

As previously noted, two months before Plaintiff's FTCA claims were initially dismissed, the Supreme Court decided *Kwai Fun Wong*, which held that 28 U.S.C. § 2401(b)[5] was not jurisdictional despite its "forever barred" phrasing.  *Id.*, 575 U.S. 402 (2015).  Due to the significant overlap in the language of these statutory provisions, it stands to reason that neither provision ought to be viewed as jurisdictional in nature.

Furthermore, the Supreme Court found in *Kwai Fun Wong* that § 2401(b)'s legislative history cleared the way for a rebuttable presumption in favor of equitable tolling in FTCA suits.  *Id*.  Plaintiff has specifically requested equitable tolling here. Dkts. 47 and 76.

---

[4] Section 2675(a) states "[a]n action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.  The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section."

[5] Section 2401(b) states "[a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented."

The Court remains mindful that Plaintiff has litigated the entirety of this case *pro se*, and accordingly it interprets Plaintiff's submissions "to raise the strongest arguments they suggest" under the summary judgment standard.   *Triestman v. Fed. Bur. of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006).

Numerous factors contribute to the Court's decision to allow Plaintiff to reinstate his FTCA claims.  First, it is clear that Plaintiff did file an administrative claim with USMS, and received a formal denial letter dated July 22, 2021.  Dkt. 74.  The letter advised Plaintiff that he could file suit regarding the claim within six months of that date in federal district court.  Second, Plaintiff's claims were timely when he initiated this lawsuit on January 16, 2015, as the harms were still ongoing.[6]  Third, Plaintiff argues that he was not aware of the need to exhaust his administrative remedies due to the insufficient access to federal legal materials he was subjected to while housed at LCJ.  Dkt. 66.  Fourth, the Court's dismissal of the FTCA claims and clear instruction that only *Bivens* claims could be brought in an amended complaint arguably hindered Plaintiff from amending his FTCA claims and timely exhausting his administrative claim with USMS.  Dkt. 3.

It would be nothing short of a Joseph Heller-esque Catch-22 if Plaintiff, while representing himself, was prevented from adequately researching law pertaining to his legal matters by the jail housing him, and yet was ultimately prevented from litigating his

---

[6] Plaintiff's claim regarding denied dental care was resolved on February 18, 2015 when a root canal was performed. Dkt. 74.  Plaintiff's claim regarding access to the courts is not nearly as cut and dried, as it relates to his criminal case which is currently on its second appeal to the Second Circuit.  *See United States v. Swinton*, 6:15-CR-6055.  For the instant purpose, it suffices to say that the claim was not yet resolved when Plaintiff filed his original complaint in this case on January 16, 2015.

claims due to a procedural error amounting to a late filing that could have been avoided had he been able to adequately research his claims.

The Supreme Court has stated that the doctrine of equitable tolling permits courts to pause the running of a statute of limitations "when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action." *Lozano v. Alvarez*, 572 U.S. 1, 10 (2014).  Plaintiff initiated this lawsuit while the harms he sought to rectify were still ongoing, and he has alleged from the start of this action that he was denied access to federal legal research material.  Dkt. 1.  This strikes the Court as an extraordinary circumstance.  In the context of equitable tolling, the Second Circuit Court of Appeals has previously found that "[t]he term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period."  *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011).  Plaintiff has provided the Court with various prison grievances he filed between September 2014 and May 2015 concerning lack of access to federal legal materials.  If this allegation is true, as the Court assumes it is for purposes of summary judgment, the obstacle very well may have fully impeded Plaintiff's compliance with the timeframe in which he was to file an administrative claim with the USMS.

Accordingly, Plaintiff's request to amend his First Amended Complaint to reinstate his FTCA claims under 28 U.S.C. § 1346(b) and to add the United States as a defendant is granted.  Relatedly, Defendants' motion for summary judgment is denied with respect to Plaintiff's FTCA claims.

### B.  Maureen Cippel

Plaintiff also seeks to amend his First Amended Complaint to add Maureen Cippel, Chief U.S. Public Health Services Officer, USMS, as a defendant.  As a Commissioned Nurse Officer in the Office of Medical Operations, USMS, Maureen Cippel is a Public Health Service ("PHS") employee.  Dkt. 36-2.  The Defendants correctly note that PHS officers may not be sued individually for torts committed within the scope of their employment due to the Public Health Service Act which mandates that FTCA claims are the exclusive remedy for personal injuries allegedly caused by PHS employees.  Dkt. 54; *see* 42 U.S.C. § 233(a).

Furthermore, Plaintiff appears to allege that a policy implemented or maintained under Maureen Cippel's leadership unduly prolonged his suffering with respect to denied and delayed dental treatment.  Dkts. 47 and 59; *see also* Dkt. 36-2.  However, in Plaintiff's subsequently filed supplemental memorandum of law opposing Defendants' motion to dismiss, he explicitly acknowledged that "[t]he policy itself is not challenged here."  Dkt. 66.  In any event, it is well established that the FTCA is not the proper channel to remedy detention policy disputes.  *See, e.g.*, *Ojo v. United States*, 2019 U.S. Dist. LEXIS 139302, at *26 (E.D.N.Y. Aug. 15, 2019) ("Numerous courts have found decisions regarding prison management, inmate security, and the security of officers are policy considerations.  Accordingly, the discretionary-function exception applies to plaintiff's FTCA claims….").

For the foregoing reasons, allowing Plaintiff leave to amend his First Amended Complaint to add Maureen Cippel as a defendant would be futile.  The request is therefore denied.

### C.  Official Capacity Claims

As to Plaintiff's desire to amend his First Amended Complaint to pursue claims against each individual defendant in their official capacities, the Court find such amendment would also be futile.  *Bivens* claims must be brought against federal officers in their individual capacities, and by way of this decision Plaintiff's *Bivens* claims in this action are fully resolved.  FTCA claims may only be pursued against the United States.  Plaintiff's request is therefore denied.

### D.  Relief Requested

Plaintiff also seeks to modify his First Amended Complaint to the extent that he claims he is owed nearly one million dollars more in damages than previously requested.  As documentation supporting the amended request has not been provided to the Court, the request is premature and is denied.  Should Plaintiff's claims ultimately be sustained, the Court will provide Plaintiff with adequate opportunity to plead his damages.

### III.   Plaintiff's Motion for an Exhaustion Hearing[7]

In apparent response to Defendants' argument that Plaintiff had not exhausted his administrative claim and was therefore foreclosed from pursuing claims under the FTCA, Plaintiff filed a motion advising the Court that "[a]ll available administrative remedies for this claim were exhausted, and no remedies were available for U.S. Marshal [*sic*] Service exhaustion in the State facilities where the plaintiff was housed."  Dkt. 67.  Plaintiff further asserted that he submitted a document equivalent to a Form

---

[7] Although Plaintiff's motion requests a hearing on the exhaustion requirements of the PLRA, it appears that he misapprehends the Defendants' argument regarding administrative exhaustion of the FTCA claims.  Dkt. 67.

95[8] to the USMS after learning of this requirement from Defendants' motion to dismiss and/or for summary judgment.

Upon review of the docket, it appears that Plaintiff attempted to initiate an administrative claim on June 14, 2017, approximately two weeks after Defendants' motion to dismiss was filed.  Dkts. 38 and 48.  Plaintiff's November 2019 motion also indicates that the USMS had not yet adjudicated his claim.

The procedural history of the administrative claim would certainly benefit from the parties' clarification.  As the Court understands it, Plaintiff filed multiple requests for information with the USMS, including the Freedom of Information Act ("FOIA") Division, in August and September 2015.  Dkt. 8.  He wrote a letter to the Office of General Counsel ("OGC"), USMS, in October 2015.  Dkt. 9.  That letter explicitly mentioned that Plaintiff was pursuing claims in civil case 15-CV-47 and wanted to provide "notification" of the same to OGC.  Plaintiff alleges that none of these letters to USMS garnered responses.  Dkts. 6 and 8.  Plaintiff later attempted to file a formal administrative claim by way of the June 14, 2017 letter previously mentioned.  Dkt. 48.  OGC responded by letter dated July 24, 2017, advising that the claim (which OGC erroneously referred to as having been received on June 22, 2016) was rejected for failure to state a sum certain.[9]  Dkt. 59.  OGC's response did not indicate that the claim was untimely; rather, Plaintiff was advised that he could resubmit his claim to include a sum certain.  *Id*.

---

[8] A Standard Form 95 ("SF-95") is typically used to submit claims for damages, injury, or death to federal agencies.

[9] The Court notes that the initial claim letter indicated that the proposed Second Amended Complaint in this case was attached.  Dkt. 48.  That document (Dkt. 47) clearly states that Plaintiff's demand is $1,316,500.00; however, it is an issue of fact to be determined at a later point whether this attachment was actually provided to OGC.

Plaintiff then resubmitted his claim by way of certified mail sent August 7, 2017.  *Id*.  The parties do not dispute that the administrative claim was not denied until July 22, 2021. Dkt. 74.

In any event, it is clear to the Court that Plaintiff diligently attempted to pursue his claim.  As discussed above, Plaintiff's FTCA claims have been reinstated and as such a hearing regarding exhaustion is unnecessary at this time.  Plaintiff's motion is therefore denied as moot.

## IV.    Plaintiff's Motion to Dismiss and for a Copy of the Case File

Plaintiff's motion to dismiss without prejudice to refile as a FTCA claim against the United States is largely duplicative of his previously filed proposed Second and Third Amended Complaints.  *Compare* Dkt. 74 *with* Dkts. 47 and 49.  As to Plaintiff's desire to add DUSM Christopher Lamp as a defendant in his official capacity, the Court finds this would be futile since FTCA claims can only lie against the United States.

Plaintiff's motion also asserts that many of his case related documents have been either destroyed or misplaced during his numerous facility transfers over the pendency of this case.  He requests a free copy of "all filings of the case" on a thumb drive.

As an initial matter, the Court notes that 28 U.S.C. § 1915, which governs proceedings *in forma pauperis*, does not state that indigent parties are entitled to complimentary copies of materials contained in the Court's files.  In light of the unusual procedural history of this case, the Court is willing to consider a limited exception, in the interest of justice.  Plaintiff is directed to submit a request limited to the specific documents he seeks in order to further litigate this matter, taking the entirety of this

23

decision into account.  An explanation must be included as to why each document is necessary.

Plaintiff's motion to dismiss is therefore denied, and his motion for the case file should be amended per the Court's foregoing instructions and resubmitted within 30 calendar days of the date of this Decision and Order.

**V.     Remaining Motions**

Both Defendants' motion to stay discovery (Dkt. 40) and Plaintiff's motion to lift the stay of all proceedings (Dkt. 59) are denied as moot in light of this decision and order.

**VI.    Conclusion**

Based on the foregoing, it is hereby

ORDERED that the Defendants' motion for summary judgment (Dkt. 36) is GRANTED, in part, as to Plaintiff's *Bivens* claims of deliberate indifference to his dental needs and violation of his right to access the courts, and DENIED as to the FTCA claims; and it is

ORDERED that Defendants' motion to stay discovery (Dkt. 40) is DENIED as moot; and it is

ORDERED that Plaintiff's motions to amend his First Amended Complaint (Dkts. 47 and 49) are GRANTED, in part, with respect to reinstating his FTCA claims and adding the United States as a defendant, and DENIED in all other respects as futile; and it is

ORDERED that Plaintiff's motion to lift the stay of proceedings (Dkt. 59) is DENIED as moot; and it is

ORDERED that Plaintiff's motion for a hearing regarding exhaustion requirements of the PLRA (Dkt. 67) is DENIED as moot; and it is

ORDERED that Plaintiff's motion to dismiss without prejudice to refile and for an electronic copy of the case file (Dkt. 74) is DENIED as to his request to dismiss this action and otherwise redirected to Plaintiff for amendment within 30 calendar days of the date of this Decision and Order, consistent with the instructions detailed above; and it is

ORDERED that the Clerk of the Court shall take all steps necessary to designate a Magistrate Judge to act in this case in accordance with 28 U.S.C. § 636(b)(1).

**IT IS SO ORDERED**.

_s/Richard J. Arcara_
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT COURT

Dated: August 26, 2022